In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1204

FLORENCE MUSSAT, M.D., S.C., on behalf of itself and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

IQVIA, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 8841 — **Virginia M. Kendall**, *Judge*.

ARGUED SEPTEMBER 27, 2019 — DECIDED MARCH 11, 2020

Before WOOD, *Chief Judge*, and KANNE and BARRETT, *Circuit Judges*.

WOOD, *Chief Judge*. Florence Mussat, an Illinois physician doing business through a professional services corporation, received two unsolicited faxes from IQVIA, a Delaware corporation with its headquarters in Pennsylvania. These faxes failed to include the opt-out notice required by federal statute. Mussat's corporation (to which we refer simply as Mussat)

brought a putative class action in the Northern District of Illinois under the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of itself and all persons in the country who had received similar junk faxes from IQVIA in the four previous years. IQVIA moved to strike the class definition, arguing that the district court did not have personal jurisdiction over the non-Illinois members of the proposed nationwide class.

The district court granted the motion to strike, reasoning that under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), not just the named plaintiff, but also the unnamed members of the class, each had to show minimum contacts between the defendant and the forum state. Because IQVIA is not subject to general jurisdiction in Illinois, the district court turned to specific jurisdiction. Applying those rules, see *Walden v. Fiore*, 571 U.S. 277, 283–86 (2014), it found that it had no jurisdiction over the claims of parties who, unlike Mussat, were harmed outside of Illinois. We granted Mussat's petition to appeal from that order under Federal Rule of Civil Procedure 23(f). We now reaffirm the Rule 23(f) order, and we hold that the principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action filed in federal court under a federal statute. We reverse the order of the district court and remand for further proceedings.

## I

Before examining the personal-jurisdiction issue, we must assure ourselves that this appeal falls within the scope of Rule 23(f), which "permit[s] an appeal from an order granting or denying class-action certification under this rule." Fed. R. Civ. P. 23(f). IQVIA argues that the order before us neither grants nor denies class status and thus it is an ordinary interlocutory

order that must await final judgment before review is possible. See 28 U.S.C. § 1291. It is true that the district court's order does not say, in so many words, that it is granting or denying class certification. But that is not the end of the story. Here is what the district court did: pursuant to Federal Rule of Civil Procedure 12, it granted IQVIA's motion to strike Mussat's class definition, insofar as Mussat proposed to assert claims on behalf of people with no contacts to Illinois. IQVIA observes that Mussat is still free to seek certification of an Illinois-only class. More fundamentally, it contends that the plain language of Rule 23(f) forecloses jurisdiction over this appeal because the order responded to a motion to strike, not a motion to certify (or decertify) a class. Because Rule 23(f) allows interlocutory appeals only from orders "under *this* rule," IQVIA concludes, an appeal is not permitted here, where the district court made its decision pursuant to Rule 12. We review this jurisdictional question *de novo*. *Marshall v. Blake*, 885 F.3d 1065, 1071 (7th Cir. 2018).

This is not the first time we have seen a Rule 12 motion to strike used this way in a putative class action. In *In re Bemis Co., Inc.*, 279 F.3d 419 (7th Cir. 2002), the Equal Employment Opportunity Commission (EEOC) brought a lawsuit against Bemis Company on behalf of a class of African American employees. Bemis answered, arguing that the EEOC had not complied with Rule 23. The EEOC moved to strike that part of the answer, and the district court granted the motion. Bemis then appealed under Rule 23(f). Just as IQVIA has done here, the EEOC argued that this court had no jurisdiction to hear the appeal "because the district court's order did not grant or deny class certification." 279 F.3d at 421. We were not persuaded. We concluded that "[t]he rejection of [Bemis's] position was the functional equivalent of denying a motion to

certify a case as a class action, a denial that Rule 23(f) makes appealable." *Id*.

Our holding in *Bemis* has received the endorsement of the Supreme Court. In *Microsoft v. Baker*, 137 S. Ct. 1702 (2017), the Court confirmed that "[a]n order striking class allegation is functionally equivalent to an order denying class certification and therefore appealable under Rule 23(f)." *Id*. at 1711 n.7. In so doing, it cited *Bemis* with approval. *Id*. Given the Court's endorsement of our reasoning, we see no reason to find that *Bemis* was wrongly decided, as IQVIA urges. The cases are clear: Rule 23(f) grants the courts of appeals jurisdiction to hear interlocutory appeals of orders that expressly or as a functional matter resolve the question of class certification one way or the other.

The fact that Mussat still has an opportunity to seek certification of a much narrower class does not change anything. The district court's order eliminates all possibility of certifying the nationwide class Mussat sought, and so to that extent it operates as a denial of certification for one proposed class. Rule 23(f) appeals are not limited to cases in which the district court has definitively rejected any and all possible hypothetical classes. To the contrary, we have held that Rule 23(f) permits a party to appeal the partial denial of a class. See *Matz v. Household Int'l Tax Reduction Inv. Plan*, 687 F.3d 824, 826 (7th Cir. 2012) (holding that the court had jurisdiction under Rule 23(f) over a district court order partially decertifying a class by eliminating 3,000 to 3,500 members); see also *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) (holding that orders modifying class definitions may be appealed so long as the alteration is "material").

The district court's order striking the nationwide class was the functional equivalent of an order denying certification of the class Mussat proposed. We therefore have jurisdiction over this appeal under Rule 23(f).

**II**

On to personal jurisdiction. IQVIA makes two principal arguments: first, it contends that the Supreme Court's decision in *Bristol-Myers* requires a decision in its favor; and second, it urges that Federal Rule of Civil Procedure 4(k) does the same. We address these points in that order.

Before the Supreme Court's decision in *Bristol-Myers*, there was a general consensus that due process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant. See, *e.g.*, *Al Haj v. Pfizer, Inc.*, 338 F. Supp. 3d 815, 818–19 (N.D. Ill. 2018) (noting that the defendant could not produce any pre-*Bristol-Myers* decision holding that "in a class action where defendant is not subject to general jurisdiction, specific jurisdiction must be established not only as to the named plaintiff(s), but also as to the absent class members"). For cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with respect to the named plaintiffs. Even if the links between the defendant and an out-of-state unnamed class member were confined to that person's home state, that did not destroy personal jurisdiction. Once certified, the class as a whole is the litigating entity, see *Payton v. Cnty. of Kane*, 308 F.3d 673, 680–81 (7th Cir. 2002), and its affiliation with a forum depends only on the named plaintiffs.

The Supreme Court has regularly entertained cases involving nationwide classes where the plaintiff relied on specific, rather than general, personal jurisdiction in the trial court, without any comment about the supposed jurisdictional problem IQVIA raises. See, *e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (nationwide class action brought in California court; defendant headquartered in Arkansas and incorporated in Delaware); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (nationwide class action brought in Kansas court; defendant headquartered in Oklahoma and incorporated in Delaware); see also *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("Nothing in Rule 23 … limits the geographical scope of a class action that is brought in conformity with that Rule."). Although IQVIA and its *amici* insist that class actions have always required minimum contacts between all class members and the forum, this is nothing more than *ipse dixit*. Decades of case law show that this has not been the practice of the federal courts. What is true, however, is that this issue has not been examined closely. The current debate was sparked by the Supreme Court's decision in *Bristol-Myers*—a case that did *not* involve a certified class action, but instead was brought under a different aggregation device. A closer look at that decision illustrates why it does not govern here.

In *Bristol-Myers*, 600 plaintiffs, most of whom were not California residents, filed a lawsuit in California state court against Bristol-Myers Squibb, asserting state-law claims based on injuries they suffered from taking Plavix, a blood thinning drug. 137 S. Ct. at 1777. Bristol-Myers sold Plavix in California, but it had no other contacts with the state. The plaintiffs brought their case as a coordinated mass action, which is a device authorized under section 404 of the California Civil Procedure Code, but which has no analogue in the

Federal Rules of Civil Procedure. That statute provides in relevant part as follows:

> When civil actions sharing a common question of fact or law are pending in different courts, a petition for coordination may be submitted to the Chairperson of the Judicial Council, by the presiding judge of any such court, or by any party … . A petition for coordination … shall be supported by a declaration stating facts showing that the actions are complex … and that the actions meet the standards specified in Section 404.1. On receipt of a petition for coordination, the Chairperson of the Judicial Council may assign a judge to determine whether the actions are complex, and if so, whether coordination of the actions is appropriate … .

In other words, rather like the multi-district litigation process in federal court, see 28 U.S.C. § 1407, section 404 permits consolidation of individual cases, brought by individual plaintiffs, when the necessary findings are made. The *Bristol-Myers* suit itself began as eight separate actions, brought on behalf of 86 California residents and 592 residents of 33 other states. 137 S. Ct. at 1778.

In the Supreme Court, Bristol-Myers argued that the California courts did not have jurisdiction over it with respect to the claims of the plaintiffs who were not California residents and had not purchased, used, or been injured by Plavix in California. The Court agreed. *Id.* at 1783–84. It noted that its holding constituted a "straightforward application … of settled principles of personal jurisdiction." *Id.* at 1783. (Interestingly, the California courts had held that they had *general* jurisdiction over Bristol-Myers, but that theory dropped out of the

case after the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014).)

Although *Bristol-Myers* arose in the context of consolidated individual suits, the district court in our case thought that the *Bristol-Myers* approach to personal jurisdiction should be extended to certified class actions. It held that the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over a defendant where "nonresident, absent members [of a class] seek to aggregate their claims with an in-forum resident, even though the defendant allegedly injured the nonresidents outside of the forum." (Actually, in federal court it is the Fifth Amendment's Due Process Clause that is applicable, but the mention of the Fourteenth Amendment made no difference here.) This meant, the court realized, that nationwide class actions will, as a practical matter, be impossible any time the defendant is not subject to general jurisdiction. This would have been far from the routine application of personal-jurisdiction rules that *Bristol-Myers* said it was performing. Nonetheless, the district court felt compelled to reach that result.

Procedural formalities matter, however, as the Supreme Court emphasized in *Taylor v. Sturgell*, 553 U.S. 880 (2008), where it stressed the importance of class certification as a prerequisite for binding a nonparty (including an unnamed class member) to the outcome of a suit. *Id.* at 894. With that in mind, it rejected the notion of "virtual representation" as an end-run around the careful procedural protections outlined in Rule 23. *Id.* at 901. Class actions, in short, are different from many other types of aggregate litigation, and that difference matters in numerous ways for the unnamed members of the class.

*Bristol-Myers* neither reached nor resolved the question whether, in a Rule 23 class action, each unnamed member of the class must separately establish specific personal jurisdiction over a defendant. In holding otherwise, the district court failed to recognize the critical distinction between this case and *Bristol-Myers*. The *Bristol-Myers* plaintiffs brought a coordinated mass action, which as we noted earlier does not involve any absentee litigants. In a section 404 case, all of the plaintiffs are named parties to the case. The statute allows the trial court to consolidate their cases for resolution of shared legal issues before moving on to individual issues. In a Rule 23 class action, by contrast, the lead plaintiffs earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b). The absent class members are not full parties to the case for many purposes.

The proper characterization of the status of absent class members depends on the issue. As the Supreme Court recognized in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), "[n]onnamed class members … may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id.* at 9–10. For example, absent class members are not considered parties for assessing whether the requirement of diverse citizenship under 28 U.S.C. § 1332 has been met. *Id.* at 10 ("[N]onnamed class members cannot defeat complete diversity…."). As long as the named representative meets the amount-in-controversy requirement, jurisdiction exists over the claims of the unnamed members. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566–67 (2005) (relying on the supplemental jurisdiction statute, 28 U.S.C. § 1367, and recognizing that the

statute overruled *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973)).
Nor are absent class members considered when a court de-
cides whether it is the proper venue. *Appleton Elec. Co. v. Ad-
vance-United Expressways*, 494 F.2d 126, 140 (7th Cir. 1974)
(holding that Rule 23 does not "require the establishment of
venue for nonrepresentative-party class members"). We see
no reason why personal jurisdiction should be treated any dif-
ferently from subject-matter jurisdiction and venue: the
named representatives must be able to demonstrate either
general or specific personal jurisdiction, but the unnamed
class members are not required to do so.

This brings us to IQVIA's second major point: that allow-
ing the non-Illinois unnamed class members to proceed
would be inconsistent with Federal Rule of Civil Procedure
4(k), which governs service of process. Rule 4(k)(1) states, in
relevant part, that "[s]erving a summons or filing a waiver of
service establishes personal jurisdiction over a defendant who
is subject to the jurisdiction of a court of general jurisdiction
in the state where the district court is located." IQVIA reads
Rule 4(k) broadly, as not requiring merely that a plaintiff com-
ply with state-based rules on the service of process, but also
establishing an independent limitation on a federal court's ex-
ercise of personal jurisdiction. Because Illinois law would not
authorize some of the absent members of the putative class to
sue IQVIA in Illinois, the argument goes, Rule 4(k) prohibits
the federal district court in Illinois from exercising jurisdic-
tion.

Aside from the fact that IQVIA's position is in tension with
Federal Rule of Civil Procedure 82, which stipulates that the
rules "do not extend or limit the jurisdiction of the district
courts or the venue of actions in those courts," there is a

simpler problem with it: IQVIA is mixing up the concepts of service and jurisdiction. Rule 4(k) addresses *how* and *where* to serve process; it does not specify *on whom* process must be served. It is true that, with certain exceptions, a federal district court has personal jurisdiction only over a party who would be subject to the jurisdiction of the state court where the federal district court is located. But, as discussed above, a district court need not have personal jurisdiction over the claims of absent class members at all. The rules permit a variety of representatives to sue in their own names: an executor, an administrator, a guardian, and a trustee, to name a few. See Fed. R. Civ. P. 17(a)(1). If any of those is a defendant, the court will assess personal jurisdiction with respect to that person, not with respect to the person being represented. So, too, with class actions: if the court has personal jurisdiction over the defendant with respect to the class representative's claim, the case may proceed. Nothing in the Federal Rules governing service of process contradicts this.

The rules for class certification support a focus on the named representative for purposes of personal jurisdiction. Rule 23(b)(3), for example, governs damages class actions. Among the factors it lists is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." The Committee Note to this provision mentions that a court should consider the desirability of the forum "in contrast to allowing the claims to be litigated separately in forums to which they would ordinarily be brought." Fed. R. Civ. P. 23(b)(3), Committee Note to 1966 amendment. These provisions recognize that a class action may extend beyond the boundaries of the state where the lead plaintiff brings the case. And nothing in the Rules frowns on nationwide class

actions, even in a forum where the defendant is not subject to general jurisdiction.

Finally, it is worth recalling that the Supreme Court in *Bristol-Myers* expressly reserved the question whether its holding extended to the federal courts at all. 137 S. Ct. at 1784 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."). In addition, the opinion does not reach the question whether its holding would apply to a class action. *Id*. at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action."). Fitting this problem into the broader edifice of class-action law, we are convinced that this is one of the areas *Scardelletti* identified in which the absentees are more like nonparties, and thus there is no need to locate each and every one of them and conduct a separate personal-jurisdiction analysis of their claims.

### III

Despite its insistence to the contrary, IQVIA urges a major change in the law of personal jurisdiction and class actions. This change is not warranted by the Supreme Court's decision in *Bristol-Myers*, nor by the alternative arguments based on Rule 4(k) that IQVIA puts forth. We therefore REVERSE the judgment of the district court and REMAND for further proceedings.